LAWRENCE C. SCHNITZER, Appellant, *v.* FRUEHAUF TRAILER COMPANY, Respondent.

First Department, February 23, 1954.

*Isidor Unger* of counsel (*Mr. & Mrs. Everett Frooks*, attorneys), for appellant.

*Gerald J. Craugh* of counsel (*Breed, Abbott & Morgan*, attorneys), for respondent.

DORE, J. P. Plaintiff Schnitzer, as chattel mortgagee of a trailer sold by defendant to one Rinaldi, the buyer, under a conditional sales contract and also as the buyer's assignee, appeals from orders dismissing his complaint and granting summary judgment to defendant. The main issue is whether defendant, the conditional vendor, should have accepted full tender of the entire balance due on the trailer concededly made the day before the advertised foreclosure sale of the trailer retaken by the seller for failure to pay said final balance.

On October 18, 1950, defendant sold a Fruehauf trailer, with eight tires, to one Rinaldi, as buyer, for the sum of $13,250.67 on the usual conditional sale terms. By October, 1952, the buyer had paid in required installments $11,532.34 leaving $1,718.33 due on October 10, 1952, as the entire balance of the purchase price. The conditional sales contract provided in the usual form that the vendee keep the trailer " free of liens and encumbrances ". Nevertheless, on August 29, 1952, Rinaldi, the buyer, executed a chattel mortgage on the trailer (and on other chattels) in plaintiff's favor to secure a loan of $10,000 payable on January 5, 1953. The chattel mortgage was not paid at maturity and thereafter the conditional vendee surrendered his interest and assigned all his equity in the trailer to plaintiff. Plaintiff, therefore, became a mortgagee with an assignment of all the vendee's rights and equity in the conditionally sold goods. In December, 1952, however, defendant under the conditional sales agreement had retaken the trailer from Rinaldi for default in payment of the unpaid balance of $1,718.33, and thereafter defendant gave notice of resale of the trailer at public auction to be held on January 22, 1953.

On January 21, 1953, the day prior to the advertised public sale, plaintiff accompanied by Rinaldi, the buyer, went to defendant's office and concededly tendered to defendant as conditional vendor the entire balance of $1,718.33 due and owing on the purchase price, plus all expenses for retaking the trailer. Obviously, the tender was with the full consent and approval of Rinaldi, the buyer, who admittedly was personally present at the tender. Defendant, however, refused to accept the tender, declined to surrender possession of the trailer, appeared the next day at the public auction, outbid plaintiff and acquired the trailer on its own bid of $3,100, a sum almost twice the amount due on the total price previously tendered by plaintiff in Rinaldi's presence. Thereupon defendant applied the proceeds of the sale in satisfaction of the unpaid balance of the price, plus expenses of the sale; and used the surplus in reduction of other indebtedness owing to defendant by Rinaldi.

Defendant moved for summary judgment dismissing the complaint; plaintiff moved for summary judgment on the first cause of action; Special Term denied plaintiff's motion and granted defendant's; plaintiff appeals.

The complaint alleges two causes of action: (1) for defendant's wrongful refusal of the tender of the entire balance due under the conditional sales contract and failure to surrender the trailer; and (2) for defendant's violation of statutory requirements in connection with the resale.

The Uniform Conditional Sales Act, adopted in this State (L. 1922, ch. 642, § 2), with amendments, has become part of our Personal Property Law (§§ 60–81). The amendments enacted from time to time have generally tended to protect the conditional vendee and all his rights in respect to the conditionally sold goods. The statute, so far as here relevant, provides:

" § 61. *Definitions.* * * * ' Buyer ' means the person who buys or hires the goods covered by the conditional sale, or any legal successor in interest of such person. * * * ' Purchaser ' includes mortgagee ".

" § 73. *Prohibition of removal or sale without notice.* Unless the contract otherwise provides, the buyer may, without the consent of the seller * * * sell, mortgage or otherwise dispose of his interest in them [the goods] "; the section then provides for notice in writing to the seller of the name and address of the mortgagee or transferee ten days before the mortgage or other disposal, and if the buyer sells or mortgages without such notice, " the seller may retake possession of the goods and deal

with them as in case of default in payment of part or all of the purchase price.''

'' § 78. *Redemption.*'' This section in effect provides that the seller '' shall retain the goods for ten days after the retaking * * * during which period the buyer, upon payment or tender of the amount due under the contract at the time of retaking and interest, * * * and upon payment of the expenses * * * may redeem the goods and become entitled to take possession of them *and to continue in the performance of the contract as if no default had occurred,*'' but the seller is not entitled to such expenses unless five days before retaking he mail to the buyer a notice stating the buyer's default. (Italics ours throughout.)

'' § 79. *Compulsory resale by seller.* If the buyer does not redeem the goods within ten days after the seller has retaken possession, and the buyer has paid at least fifty per centum of the purchase price at the time of the retaking the seller shall sell them at public auction * * * such sale to be held not more than thirty days after the retaking. * * * The seller may bid for the goods at the resale.''

'' § 80-h. *Rules for cases not provided for.* In any case not provided for in this article the rules of law and equity, including the law merchant * * * shall continue to apply to conditional sales.''

At Special Term, defendant succeeded on its defenses alleging, in substance, the buyer's breach of contract in executing a chattel mortgage to plaintiff without consent of the conditional vendor, the buyer's failure to give proper notice of intention to mortgage (Personal Property Law, § 73, *supra*), failure to redeem the trailer within ten days after the retaking (Personal Property Law, § 78, *supra*), and invalidity of plaintiff's assignment by reason of its having been made after the buyer's default and more than ten days subsequent to the seller's repossession of the truck.

Defendant had rejected the tender of payment of the unpaid balance of the price, plus expenses, on the grounds that the tender was untimely; that notice of public sale of the trailer had already been given and advertised; and that defendant had no knowledge of plaintiff's rights and could not be expected on the eve of sale to determine whether plaintiff had any standing in the matter. It is well settled that stated grounds for refusal of a tender are a waiver of all other objections.

On the conceded facts as viewed most favorably to defendant, we hold that the defenses and grounds for rejecting the tender

lack merit. Defendant had actual knowledge, or the means of knowledge, as to plaintiff's rights in the conditionally sold chattel. Plaintiff and Rinaldi, the conditional vendee, both aver, without any contradiction, that at the time of tender they informed defendant of plaintiff's mortgage on the trailer, and of the assignment of the buyer's interest and equity. Apart from this, it is admitted that plaintiff was accompanied by Rinaldi, the conditional vendee, who joined in the tender. If, therefore, defendant had any real doubt as to plaintiff's standing, it was a simple matter to ask Rinaldi who made the original contract of conditional sale with defendant and who was present at the tender. The true state of facts and relation of the parties were, in fact, told to defendant and on this record defendant is charged with notice of plaintiff's right to make the tender as a person entitled to discharge the balance of the indebtedness owing on the trailer.

On the facts disclosed, plaintiff had standing to make the tender of the unpaid purchase price so as to require the conditional vendor to accept. Plaintiff was both assignee of the buyer's right and equity and holder of a chattel mortgage on the conditionally sold goods. The law recognizes his standing to tender the price as assignee. (*Powers* v. *Burdick,* 126 App. Div. 179, 181; *Tweedie* v. *Clark,* 114 App. Div. 296; *Smith Motor Car Corp.* v. *Universal Credit Co.,* 154 Misc. 100, affd. 154 Misc. 105; *Rost* v. *Knabe & Co.,* 154 Misc. 425; *Steiner* v. *National Cash Register Co.,* 155 N. Y. S. 447.) The same right of tender belongs to plaintiff as mortgagee. '' The right of a mortgagee or purchaser from the conditional buyer to make such tender with the same effect as if made by the buyer himself is also recognized, even where the conditional sales contract contains express restrictions against sale, assignment or mortgage '' (*Walker* v. *Houston,* 215 Cal. 742, 747). (See, also, *Matter of Falick* [*Alma Holding Corp.*], 257 App. Div. 320, and *Pisculli* v. *Bellanca Aircraft Corp.,* 17 Del. Ch. 151, affd. *sub nom. Bellanca* v. *Pisculli,* 18 Del. Ch. 427.) In fact, it is well settled in our law that any subsequent lienor may redeem against a senior security interest in process of foreclosure; the right is derived from the owner of the mortgaged property (*Nelson* v. *Loder,* 132 N. Y. 288; *Fleischmann* v. *Clausen,* 222 App. Div. 7).

Defendant, however, asserts the invalidity of plaintiff's assignment from the buyer on the grounds (1) that the conditional sales contract prohibits assignment by the vendee, and (2) that the assignment was made more than ten days after retaking of the trailer for the buyer's default. Both grounds are

devoid of merit. In the first place the conditional sales contract before us has no provision against assignment by the vendee, and such restriction will not be implied (see *Allhusen* v. *Caristo Constr. Corp.*, 303 N. Y. 446). In fact, this conditional sales agreement itself provides that it shall be binding on the " assigns of the parties ". In any event, however, an assignment in violation of a clause requiring vendor's consent constitutes at most a default entitling the seller to resort to available remedies as in the case of nonpayment (Personal Property Law, § 73).

Nor is it a valid objection that the assignment to plaintiff was made after retaking for default. The buyer's right to reclaim the goods following his default or retaking by the seller is assignable (*Tweedie* v. *Clark,* 114 App. Div. 296, *supra*; *Smith Motor Car Corp.* v. *Universal Credit Co.,* 154 Misc. 100, affd. 154 Misc. 105, *supra*; *Steiner* v. *National Cash Register Co.,* 155 N. Y. S. 447, *supra*). Where, as here, more than 50% of the purchase price has been paid prior to default, the buyer's equity in the property is not forfeited by default and retaking (see *Watkins* v. *Carter,* 267 Ky. 241). This equity interest continues as a subsisting property right of the buyer and remains subject to assignment or transfer the same as any equitable right or interest until extinguished on foreclosure (*Tremaine* v. *Mortimer,* 128 N. Y. 1; *Kitchen* v. *Lowery,* 127 N. Y. 53; *King* v. *Van Vleck,* 109 N. Y. 363). The statute itself contains implicit recognition of this fact in its express provisions for payment " to the buyer " of any sum remaining out of the proceeds of the resale after payment " of the balance due " plus expenses (Personal Property Law, § 80-a).

The learned Special Term, however, also held that the vendee's execution of the chattel mortgage to plaintiff was a breach of contract and, therefore, a fatal bar to recovery. We think the ruling does not give sufficient effect to the essential nature of the conditional sales bargain. On this, Professor Williston says of conditional sales contracts:

" No satisfactory solution of the rights of the parties in such a transaction can be found without observing that the essential character of the transaction is the same as that of an absolute sale with a mortgage back. A failure to observe and apply this analogy has led to injustice   *   *   *   against the buyer. *   *   * The buyer   *   *   * is denied the protection which courts of equity long ago gave to mortgagors. The opportunity and danger of a forfeiture are the same in the case of a conditional sale as in a mortgage   *   *   *.

" In view of the general adoption of equitable principles by courts of law today, either under statutes or without their aid, it is only the effect of early precedents that interferes with the application here of similar principles whatever the form of action. Some courts have so determined and have given the parties rights analogous to those of mortgagor and mortgagee. In almost all jurisdictions statutes have been enacted which remedy in whole or in part the defects of the common law in dealing with the question; especially the injustice to the buyer of permitting a forfeiture when most of the price has been paid has been guarded against in these statutes." (3 Williston on Sales [Rev. ed.], § 579d, under the caption " *A conditional sale should be treated as a mortgage.*")

Although plaintiff seeks factually to raise a very plausible issue of waiver by defendant, we will assume, as defendant contends, that the chattel mortgage was given without defendant's consent. This would constitute a breach of contract by the vendee, and under the contract of the parties the vendor would be entitled to accelerate payment of the price. In this case, there could be no such acceleration as the only thing due was the very last payment of the balance of the purchase price. On this issue, Eager on Chattel Mortgages and Conditional Sales (§ 74, p. 86), says: " A provision in a conditional sale agreement that the full amount of the unpaid purchase price shall become due in the event the buyer shall encumber the goods does not prevent the buyer from giving an effective chattel mortgage upon the goods. Notwithstanding such provision, the mortgage will be effective as between the parties thereto and as to third persons. The mortgage, though unauthorized by the conditional seller, is also effective as against him as a transfer of the conditional buyer's interest but, the seller by virtue of the provision in question, would have the right to declare the entire price due and, on non-payment thereof, retake the goods." (See, also, *Powers* v. *Burdick,* 126 App. Div. 179, *supra,* and Vold on Sales, pp. 277, 278.)

In this case, however, the buyer's violation of that aspect of the contract is without significant legal consequence since at the time the seller repossessed the trailer the whole of the unpaid balance of the purchase price was due and on that ground the seller had the right to retake and did so. Further, the statute itself explicitly defines the remedy and procedure to be followed by the vendor in a case where the vendee has given an unauthorized chattel mortgage on the conditionally sold goods. Thus,

defendant as conditional vendor is permitted to proceed as in the case of a default in payment of the price (Personal Property Law, § 73, *supra*) and retake the trailer with the obligation of compulsory resale, where, as here, more than 50% of the purchase price had already been paid by the buyer (Personal Property Law, § 79). The execution of the chattel mortgage, therefore, did not also operate further to penalize the buyer by depriving him of his right of redemption. There was no forfeiture of that equity. Conceding a breach of contract in making the mortgage, we hold under the facts here disclosed that such breach was not a bar to recovery in this action.

The same considerations apply to the failure to give proper notice of intention to mortgage as required by section 73 of the Personal Property Law, an omission also regarded by the learned Special Term as fatal to plaintiff's case. But the statute itself defines the consequence of such violation or default on the buyer's part: — it simply authorizes the seller to retake possession of the goods and deal with them as in case of default in payment (Personal Property Law, § 73, *supra*). In any event in this case the buyer's default in making the chattel mortgage without the seller's consent, and failure to give notice of intention to mortgage, were not the ground of retaking of the goods. Defendant itself claims not to have known of the chattel mortgage and plaintiff's interest at the time of retaking or until the eve of the published sale of the trailer.

In our opinion also, failure to redeem the trailer within ten days after the seller's retaking is not a bar to plaintiff's recovery. The statute (Personal Property Law, § 78) provides, it is true, that the buyer '' may redeem the goods '' during such period; but it also expressly provides in the same sentence that the buyer on such redemption is entitled to take possession of the goods '' *and to continue in the performance of the contract as if no default* had occurred ''. (Italics supplied.) In effect, therefore, this requirement is merely a statutory grace period given the buyer during which period the seller *must* retain the goods within the buyer's reach to enable him to raise the money to cure his default and thus keep the contract alive on its original installment terms. Section 78, however, has no application to a case such as this in which the tender concededly was made to the seller *after* the ten-day period but *before* the date of sale, and not for an installment but *for the total balance of the price due,* plus all expenses, so that there could be no further performance of the contract. Acceptance of the tender and its

application to the amount due would concededly constitute complete performance of full payment under the contract here in question; and that is the only contract that may be considered or acted upon by the parties or the court in determining rights and duties herein. In his Commentaries on Conditional Sales, Professor Bogert, the draftsman of the Uniform Conditional Sales Act, states (2A Uniform Laws Ann., p. 157): "The Uniform Act does not expressly cover the case of a tender of performance by a buyer *after the expiration of the ten day redemption period, but before the day set for the resale of the goods.* \* \* \* However, it would seem highly probable that courts having equitable powers would hold that a tender of performance before the day set for the resale, although after the expiration of the statutory period for redemption, would make it *the duty of the seller to accept such tender and allow the buyer to take back the goods.* It would surely be inequitable to allow the seller, after such tender, to proceed with the foreclosure sale \* \* \* and compel the buyer to run the risk of having his equity wiped out \* \* \*."

Accordingly, we think that the precise state of facts in this case is not expressly covered by the provisions of the Uniform Conditional Sales Act. Indeed, it was not intended to cover every conceivable state of facts likely to arise in connection with such sales. (Bogert, Commentaries on Conditional Sales, 2A Uniform Laws Ann., § 152, p. 201.) This is clearly indicated by the statute itself which in section 80-h of the Personal Property Law, "*Rules for cases not provided for*", says: "In any case not provided for in this article the rules of law and equity, including the law merchant, and in particular those relating to principal and agent and to the effect of fraud, misrepresentation, duress or coercion, mistake, bankruptcy, or other invalidating cause, shall continue to apply to conditional sales."

As above indicated, there is no dispute factually that the buyer had paid more than 50% of the purchase price before default and retaking by the seller; in fact the buyer had paid $11,532.34, almost 90% of the entire purchase price and concededly tendered the entire balance plus all expenses prior to the resale at public auction. The state of facts at bar is a clear example of how a defaulting buyer may become completely at the mercy of a conditional vendor. If defendant is right, it means that a conditional vendee in default on final installment of the price can have his equity in the conditionally sold goods

completely wiped out and acquired by a vendor with even one more dollar to bid at the public sale of the repossessed chattel though the buyer or his assignee has paid or offered to pay the entire purchase price. The injustice of such a result is well illustrated in this case where the conditional vendor was tendered full payment of the price of which the buyer *had already paid* $11,532.34 out of the total of $13,250.67; but also reacquired for $3,100 a trailer which had been sold to the conditional vendee for $13,250.67 only a little more than two years before.

Fortunately, in the circumstances of this case, both law and equity stand in the way of defendant's achievement. It is easy to go astray in reliance on early precedents; we will adhere to more enlightened conceptions of the realities in conditional sales. Thus Professor Bogert in Commentaries on Conditional Sales (2A Uniform Laws Ann., p. 159) says: '' It was the intention of the draftsmen of the Act to provide in sections 19 to 23 a foreclosure sale system, for the purpose of protecting the equity of the conditional buyer and insuring the return to him of such proportion of his part payments as are equitably due him. In taking such action with respect to conditional sales the authors of the Uniform Act were but following the precedent set with respect to the companion credit device, the chattel mortgage. The chattel mortgagee is allowed to foreclose the mortgagor's equity of redemption only by a sale, either through a suit in equity or without action, on advertisement.'' Williston on the same subject says: '' The mortgage relation of the parties is recognized and their rights and remedies regulated accordingly.'' (3 Williston on Sales [Rev. ed.], § 579g, p. 238; see, also, Vold on Sales, pp. 289–294; Commissioners' Note, 2 Uniform Laws Ann., Conditional Sales, p. 29.)

The parties to a conditional sale have divided property interests in the goods. The buyer is the beneficial and substantial owner, with such attributes of ownership as possession, use and control, and has his equity of redemption sedulously guarded by the law. The seller, on the other hand, reserves title to the goods solely as security for payment or performance by the buyer. Essentially a conditional sale is only a credit device. Its plain and obvious purpose is the same as a purchase-money chattel mortgage despite technical or theoretical differences between the two forms of security.

The retaking of the goods is simply for the purpose of enforcing the seller's security for the price by foreclosure of the defaulting buyer's equity of redemption. As in the case of a

mortgage foreclosure, however, the right of redemption may be exercised at any time up to sale. In Eager on Chattel Mortgages and Conditional Sales the general rule as to mortgages is stated as follows (§ 254): " * * * anyone, who has acquired or who has the right to acquire or to have sold for his account the equity of redemption of the mortgagor in mortgaged property, has the right to redeem the property at any time before the equity of redemption is properly cut off by foreclosure or sale or lost by laches. The equity of redemption of the mortgagor is transferable and, therefore, in the first place, it may be deemed well established that the purchaser or other transferee of such equity has the same right as the mortgagor would have to redeem."

When the seller gets the whole amount due him, he has recovered all that he is equitably entitled to receive under his contract. " Forfeitures are abhorrent to the law and will not be declared if there is any other reasonable theory upon which a case can be settled." (*United States Mach. Co.* v. *International Metals Development,* 74 Cal. App. 2d 5, 14.)

Had defendant bid only to the amount of the balance due and its expenses, the trailer would have been knocked down to the plaintiff thereby obviating the lawsuit. Defendant cites no other decision by any court in this State which approves the action taken herein by defendant. Both on principles of equity and reason as well as law, the court should not permit a seller to reject a tender proper in amount constituting full payment of the price of $13,250.67 the day before the sale, to enable the seller to acquire the goods on resale by bidding them in at a price far above the balance due and then to appropriate such balance for other alleged indebtedness having nothing to do with the contract in question. (See *Kindelberger* v. *Kunow,* 122 App. Div. 158, affd. 195 N. Y. 517.)

We conclude, therefore, that defendant in the instant case should have accepted plaintiff's tender the day before foreclosure sale, cancelled the public auction of the trailer, and returned the chattel fully paid for. Its refusal of the tender and failure to surrender the trailer amounted to a wrong for which defendant must answer.

Defendant's motion for summary judgment insofar as it is addressed to the first cause of action should have been denied; plaintiff's motion for summary judgment on the first cause of action should have been granted, with costs; the learned Special Term properly disposed of defendant's motion addressed to

the second cause of action seeking in the alternative the same damages. Accordingly, the orders and judgment appealed from should be modified in accordance with this opinion, with costs to the appellant. Settle order.

CALLAHAN, BREITEL, BOTEIN and BERGAN, JJ., concur.

Judgment and orders unanimously modified in accordance with the opinion herein, with costs to the appellant and, as so modified, affirmed. Settle order on notice. [See *post,* p. 794.]