Bergan, J.
Defendant was indicted for assault, second degree, upon a police officer and resisting a police officer in discharge of duty, a misdemeanor (former Penal Law, § 1851). After a trial he was convicted by the jury of the lesser degree of assault (third degree, a misdemeanor) and of violation of section 1851. A reformatory sentence was imposed.
There is conflicting testimony on the assault and resisting the officer, but the jury could well have found the policeman’s version of the events true. The policeman spent a week in bed as a result of the attack, was on crutches for three weeks and absent from duty for a month. Defendant had lacerations of the face and scalp, a swollen lip and a tender leg.
Defendant does not argue the insufficiency of the evidence to convict him but contends he was denied a fair trial because his credibility as a witness was attacked by improper questions and because there was improper cross-examination of his character witness.
This cross-examination was directed to defendant’s purported activities in selling narcotics and participation in the robbery *633 of taxi drivers. In the latter instance two other persons were convicted but this defendant was not indicted.
The character witness, a chauffeur of the Spanish Ambassador at the United Nations, testified he knew defendant for 13 years and that as far as being a truthful and peace-loving person nobody ever said anything bad about him. Defendant’s counsel left it at that.
On cross-examination, the witness was asked if he had ‘ ‘ discussed ” with members of the community the truthfulness, aggressiveness or peacefulness of defendant and he said he had and was asked: “ In discussing this defendant, did you ever hear anybody say he was selling narcotics on the beach at Orchard Beach this summer?”
There was objection, a motion for mistrial, a conference at the bench and the question was allowed. The witness answered “No, sir.” Then the question was asked: “Did you ever hear it discussed in the community that this defendant took part in four taxi cab stiekups?” This, too, was answered “No, sir.” There was similar objection and motion.
Defendant concedes in this court the right of the People to test this kind of testimony of good character by cross-examination but argues the ‘ ‘ right should not be so exercised "as to allow introduction of unfounded, speculative and highly prejudicial statements (couched in the form of questions) regarding a defendant’s past ’■’.
When the defendant testified in his own behalf he was cross-examined by the District Attorney on his participation with the two persons who had been convicted in the stickup of a taxi and on the finding of keys to four taxis in a room in which defendant was staying. The scope of this was restricted by the court but questions implying defendant’s participation in taxi holdups were allowed.
The rule that evolves from the cases is that questions such as these to the character witness and to the defendant himself as a witness are not error if the prosecutor asked them in good faith, that is to say, if he had some reasonable basis for believing the truth of things he was asking about. •
The ultimate argument of the appellant is for a rule suggested by Wigmore for a careful control of this type of cross-examination by the Judge, and by the suggestion of Fisch in her work *634 on evidence that the cross-examination should not be permitted “ unless the trial judge has satisfied himself in the absence of the jury that the question pertains to an actual occurrence (See 3 Wigmore, Evidence [3d ed.], § 988; Fisch, New York Evidence, § 178, p. 94.)
The leading modern case on character testimony and the cross-examination of a character witness is Michelson v. United States (335 U. S. 469 [1948]). There, the policy problem of allowing this type of evidence at all was examined exhaustively by Justice Jackson, including a number of New York cases, and it was held that when a defendant introduces the subject of his good character it “ throw[s] open the entire subject ” of his good name through cross-examination of the witnesses called as to contrary reports and rumors and by independent proof adversely affecting the reputation of defendant (p. 479). The court felt that the archaic disadvantages of the rule could be overcome by “ discretionary controls in the hands of a wise and strong trial court ” (p. 486).
The general rules' governing what a character witness testifies to are laid down for New York in People v. Van Gaasbeck (189 N. Y. 408). Reputation, from the speech of people, is treated as a fact (like the fact of market value) established by witnesses in a position to have knowledge. (See, also, People v. Fay, 270 App. Div. 261, affd. 296 N. Y. 510.)
The cross-examination of defendant, when he offered himself as a witness, on facts which might adversely affect his credibility as a witness was justified on this record (People v. Sorge, 301 N. Y. 198, 200; People v. Webster, 139 N. Y. 73, 84). There are some specific limitations. He cannot be questioned about a criminal charge on which he has been acquitted (People v. Santiago, 15 N Y 2d 640); nor can he be asked whether he has been indicted (People v. Cascone, 185 N. Y. 317, 334).
But the failure of the Grand Jury to indict defendant for the taxicab robberies did not make it improper for the prosecutor to question defendant as to the underlying fact (People v. Shivers, 21 N Y 2d 118, 122; People v. Conroy, 153 N. Y. 174, 187).
The prosecutor explained to the Judge on the record and in the presence of defendant’s counsel the exact basis of his belief that there was a “ reasonable basis in fact ” for the in criminal *635 ing question. Reports had been received ‘ ‘ from several parties ” by a policeman, whose name was disclosed by the prosecutor, that defendant had sold marijuana cigarettes on a public beach.
Defendant’s presence in a room with one of the two men convicted of robbery, in bed but fully dressed, at 2:00 a.m., immediately after one of the taxi holdups and in which room were found the keys of four taxis that had been held up, was disclosed to the prosecutor by the police.
There was, therefore, solid basis for the questions that were asked and ground on which the Judge could rule, as a matter of discretion, they were asked in good faith. They were not, as appellant suggests to this court, ‘ ‘ unfounded ’ ’ and with ‘ ‘ no reasonable basis in fact ’ ’.
The judgment should be affirmed.